United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

MIGUEL ANGEL VALENCIA-GARCIA,

        Defendant.

No.  CR 18-00290 WHA

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

## INTRODUCTION

In this motion for compassionate release, in-custody defendant moves *pro se* for release due to medical hardship, family circumstance, and alleged abuse while incarcerated.  For the reasons stated herein, the motion is **DENIED**.

## STATEMENT

In 2017 and 2018, defendant conspired to distribute methamphetamine and heroin in our district and beyond.  In January 2018, he arranged a 10-kilogram methamphetamine pickup from a courier in Los Angeles for distribution in the Bay Area (Dkt. No. 109 at 4).  That same month, he arranged for the sale of 350 grams of black tar heroin (*ibid*.).  In April 2018, defendant traveled to Southern California to arrange the import of a kilogram of what he

believed to be "China white" heroin from Tijuana, Mexico (*ibid*.).  Defendant personally drove the product back to the Bay for sale.  Testing after seizure revealed it to be noscapine, a poppy byproduct (*ibid*).

In March 2019, defendant pled guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine (Count One), conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin (Count Two), and attempt to posses with the intent to distribute heroin (Count Seven) (Dkt. No. 109 at 1-2).  Defendant's guideline sentence was 135 – 168 months (Dkt. No. 210 at 23).  He was sentenced to 135 months of imprisonment and five years of supervised release pursuant to a "C" plea (a plea stipulated to by defendant as a way of avoiding a higher sentence).

At the time of sentencing, defendant had three prior drug convictions.  In 1996, he sentenced to three years for the transportation or sale of narcotics in violation of California Health and Safety Code Section 11352, and possession of ephedrine with intent to manufacture methamphetamine in violation of California Health and Safety Code Section 11383(c) (Dkt. No. 210 at 11-12).  In 2009, he was sentenced for conspiracy to sell narcotics in violation of California Penal Code Section 182(a)(1) (10 years), and for using a false compartment to conceal a controlled substance in violation of California Health and Safety Code Section 11366.8(a) (10 years), to run consecutively (*id*. at 12-13).  He served roughly three years of that sentence in CDCR custody.  In 2019, defendant was sentenced to three years for using a false compartment to conceal a controlled substance in violation of California Penal Code Section 1366.8(a) and for transporting a controlled substance in violation of California Health and Safety Code Section 11352(a) (*id*. at 14-15).

## ANALYSIS

On the motion of a defendant, the sentencing court may reduce a term of imprisonment if:

> after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that —
>
> **(1)(A)** Extraordinary and compelling reasons warrant the

United States District Court
Northern District of California

reduction;

[ . . . ]

**(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).  A court must make three findings:  (1) that a reduction is compatible with the Section 3553 factors, (2) that an "extraordinary and compelling reason" (defined in Section 1B1.13) justifies reduction, and (3) that the defendant is not a danger to the safety of any other person in the community.  A successful motion must meet each mark; defendant falls short of all three.

### 1. DEFENDANT HAS NOT MADE OUT AN EXTRAORDINARY AND COMPELLING REASON.

Defendant's motion does not present extraordinary and compelling reasons within the meaning of Section 1B1.13.

*First*, the conditions of defendant's confinement do not constitute an extraordinary and compelling reason.  Defendant states that the COVID-19 counter-measures taken by FCI Victorville, namely his three-week isolation after he caught COVID and the general practice of administrative lockdowns, constitute "torture," and have led to "devastating, brutal, torturous, and inhumane" consequences (Dkt. No. 534 at 3-4).  "The allegedly 'harsh' conditions of confinement created by the coronavirus pandemic apply to all inmates and do not in themselves warrant special treatment for [defendant]."  *United States v. Hernandez*, No. 5:13-CR-00200, 2022 WL 910091, at *6 (E.D. Pa. Mar. 29, 2022) (Judge Joseph Jeeson); *United States v. Johnson*, No. 1:18-CR-00907-PAC-2, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021) (Judge Paul Crotty) ("[A]lthough the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure.").

United States District Court
Northern District of California

1    *Second*, defendant's medical conditions do not constitute an extraordinary and

2    compelling reason.  Section 1B1.13 provides that the medical condition of a defendant is an

3    extraordinary and compelling reason if:

> **(A)** The defendant is suffering from a terminal illness . . . .
> Examples include metastatic solid-tumor cancer, amyotrophic
> lateral sclerosis (ALS), end-stage organ disease, and advanced
> dementia.
>
> **(B)** The defendant is--
>> **(i)** suffering from a serious physical or medical condition,
>>
>> **(ii)** suffering from a serious functional or cognitive
>> impairment, or
>>
>> **(iii)** experiencing deteriorating physical or mental health
>> because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to
>> provide self-care within the environment of a correctional
>> facility and from which he or she is not expected to
>> recover.
>
> **(C)** The defendant is suffering from a medical condition that
> requires long-term or specialized medical care that is not being
> provided and without which the defendant is at risk of serious
> deterioration in health or death.

17   U.S.S.G. § 1B1.13.  Defendant does not suffer from a "terminal illness" comparable to end-

18   stage organ disease or solid-tumor cancer, has not experienced seriously diminishment of his

19   ability to provide self-care, and does not require specialized care beyond the faculties of the

20   BOP.

21        Defendant argues that the conditions of his confinement have caused him to suffer from

22   "irreversible progeria consequences," which have "aged [him] 20 years going from a 65-year-

23   old man to an 85-year-old geriatric" (Dkt. Nos. 540, 541).  He points to long-term

24   consequences of a prior COVID-19 infection, including "memory and attention loss and

25   disorientation," a "painful enlarged prostate and bladder . . . caused by a lower urinary tract

26   disorder," "Type 1 and Type 2 high blood pressure attacks," "perpetual hypertension and

27   hyperlipidemia," a "perpetual cold or never-ending flu," an undiagnosed "severe . . .

28

United States District Court
Northern District of California

1    neurological disorder," "death shakes," and other conditions, all of which have "turned [him]

2    into a vegetable" (Dkt. No. 536 at 3-5).

3          Defendant's medical records do not support his characterization of his physical condition.

4    As an initial matter, defendant does not suffer from progeria.  Progeria is "[a] condition of

5    precocious aging *with onset at birth or early childhood*."  Progeria, STEDMAN'S MEDICAL

6    DICTIONARY (28th ed. 2014) (emphasis added).  Progeria is a genetic condition; there is no

7    cure.  Symptoms appear within the first year of life, and afflicted children do not live past 20

8    years old.  Progeria, MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,

9    https://www.mayoclinic.org/diseases-conditions/progeria/symptoms-causes/syc-20356038 (last

10   visited September 12, 2024).

11         BOP medical records state that defendant had previously suffered from "chronic

12   sinusitis," "otitis media" (infection of the middle ear), and an "unspecified disease of [the]

13   inner ear" (Dkt. No. 536 at 11).  Each of those conditions were "resolved" by November 2023

14   (*ibid*).

15         Defendant's ongoing conditions include "essential (primary) hypertension" (high blood

16   pressure) and "hyperlipidemia" (high cholesterol) (*id*. at 12).  Defendant is afforded regular

17   access to the BOP's chronic care clinic, medications, and counseling regarding lifestyle

18   changes that may help improve those conditions, and records reflect that both are being

19   adequately treated in custody.  A November 2023 medical report noted that defendant's

20   hypertension is "well controlled on current meds," and requires "routine labs and monitoring."

21   During that medical appointment, defendant reported "compliance and tolerability with

22   prescribed medications," and "denie[d] side effects."  An April 2024 Chronic Care Clinic

23   report reaffirmed that defendant's hyperlipidemia was "well controlled," and that his

24   triglycerides had reduced significantly with diet and lifestyle changes (Dkt. No. 536 at 14).

25   His blood pressure was likewise "well controlled" (*ibid*.).

26         Defendant also suffers from lower back pain (*id*. at 12).  Defendant was prescribed

27   ibuprofen to help with the pain, an X-ray of his lumbar spine was performed, and he was given

28   a pillow and "mattress overlay," after which he "noted improvement in back pain overnight"

1    (*id*. at 14).  He receives regular counseling concerning physical exercises and lifestyle changes

2    that may alleviate his localized lower back pain, in addition to written materials detailing

3    helpful exercise regiments.  Finally, it is true that defendant has an enlarged prostate with

4    lower urinary tract symptoms, but that, too, is being addressed via regular medical

5    appointments and prescription medicine (*id*. at 13, 26).

6           Defendant's declaration states that he has "cold sweats, fever, chills, and unexplainable

7    and torturing body pains" (Dkt. No. 536 at 4).  BOP medical records, meanwhile, indicate that

8    defendant has consistently reported a lack of "constitutional symptoms," including "**No:** chills,

9    easily tired, fatigue, fever" (*id*. at 13).  Moreover, he rated his back pain as "4/10 in the morning

10   and report[ed] his pain improves as he gets up and moves around throughout the day" (*id*. at 14).

11   During another check-up, he "reporte[ed] his pain is localized to his lower back," and rated the

12   pain a "5" (*id*. at 28).

13          Defendant's declaration states that he "sometimes involuntarily shake[s] while sleeping,"

14   and that a "severe and embarrassing neurological disorder" causes him to "rock back and forth or

15   sideways" "involuntarily" (Dkt. No. 536 at 4).  BOP medical records, meanwhile, state that

16   defendant "denie[d] seizures or involuntary movement" (*id*. at 11).

17          Defendant notes in his declaration that "before I was infected with COVID-19 I was not

18   allergic to anything and now I seem to be allergic to everything" (Dkt. No. 536 at 4).  BOP

19   medical records, meanwhile, state that his "allergies list [was] reviewed/updated for the presence

20   or absence of allergies, sensitivities, and other reactions to drugs, materials, food and

21   environmental factors" in April 2024, and that defendant had "no known allergies" (*id*. at 14).

22          Defendant's motion and supporting declaration overstate the severity of his condition as

23   recorded in BOP medical records.  Those ailments that defendant does in fact suffer from fall

24   far short of the bar for extraordinary and compelling reasons.  The BOP is well equipped to

25   address defendant's medical needs, and the record suggests that BOP Health Services have

26   dedicated significant time and resources to doing so, with positive results.

27          *Third*, defendant's family circumstances do not constitute an extraordinary and

28   compelling reason.  Section 1B1.13 provides that "the death or incapacitation of the caregiver

United States District Court
Northern District of California

United States District Court
Northern District of California

1    of the defendant's minor child or the defendant's child who is 18 years of age or older and

2    incapable of self-care because of a mental or physical disability or a medical condition" may

3    constitute an extraordinary and compelling reason.  Sometime before defendant's

4    incarceration, his now twenty-year-old son Carlos was diagnosed with microcephaly.  Carlos is

5    unable to care for himself and requires constant assistance.  Carlos's mother stated in a

6    declaration that "[i]n the past I relied on my other sons and daughters to help me care for

7    [Carlos], or on friends and neighbors.  But my sons and daughters are at the age of leaving

8    home and my neighbors cannot help me care for him for free" (Dkt. No. 535 at 2).

9         Defendant provides no medical documentation establishing that his son is incapable of

10   self-care beyond the declaration of Carlos's mother (Dkt. No. 535 at 2) ("For many years

11   Carlos has been diagnosed with untreatable and irreversible microcephaly with reduced life

12   expectancy and a poor brain function prognosis").  Moreover, defendant falls short of the

13   necessary "robust evidentiary showing that [he] is the only available caregiver."  *United States*

14   *v. Bragg*, No. 12CR3617-CAB, 2021 WL 662269, at *2 (S.D. Cal. Feb. 19, 2021) (Judge

15   Cathy Bencivengo).  Carlos's mother states that she is unavailable at times because she must

16   work, and that her other children are "leaving home" (Dkt. No. Decl. at 2).  Defendant does not

17   otherwise establish that other caretakers are unavailable, only that prior caregivers may now be

18   unwilling.  As a general matter, other family members' unwillingness to continue care does not

19   constitute an extraordinary and compelling reason.  *United States v. Milchin*, 2024 WL

20   2831809, at *2 (E.D. Pa. June 4, 2024) (Judge Gerald Pappert); *United States v. Conley*, 2024

21   WL 490337 (W.D. Va. Feb. 8, 2024) (Judge James Jones).  Carlos's siblings need not live with

22   Carlos in order to help as caretakers, and defendant's motion does not explain why Carlos's

23   siblings cannot continue to pitch in when his mom is at work.

24        In sum, defendant has not established an extraordinary and compelling reason as defined

25   by Section 1B1.13.

26

27

28

7

1

2.      DEFENDANT HAS NOT SHOWN THAT HE IS NOT A DANGER TO THE
COMMUNITY.

2       Defendant argues that he presents a minimal risk of recidivism because of the generally

3   low recidivism rate for offenders 65 years old and older (16%, according to defendant), and

4   because he will be deported to Mexico upon release.

5       *First*, defendant does not provide an accessible source for the recidivism numbers cited in

6   his motion.  The most recent Sentencing Commission literature available to the Court states

7   that offenders aged 60-64 at the time of release had a rearrest rate of 14.2%, while offenders

8   aged 65-69 had a rearrest rate of 12.5%.  Older Offenders in the Federal System, UNITED

9   STATES SENTENCING COMMISSION (July 2022).  Defendant has already beat the odds once:  he

10  was 60 years old when he arranged a ten-kilogram methamphetamine pickup and then

11  attempted to import a kilogram of "China White" heroin from Tijuana to the Bay.  His age has

12  not previously deterred defendant, and it is unlikely to do so should he be released.

13      Moreover, defendant was not an unsophisticated hand-to-hand street dealer.  He worked

14  to import large quantities of narcotics *from Mexico* into the Bay.  His deportation is likely to

15  amplify, not mitigate, the risk that defendant poses.  He will be closer to the source of his

16  product and beyond the reach of justice.

17

3.      DEFENDANT HAS NOT SHOWN THAT A REDUCTION IN HIS
SENTENCE IS COMPATIBLE WITH THE SECTION 3553(A) FACTORS.

18

19      Defendant's "C" plea bargained for a 135-month sentence, at the bottom of the 135 – 168

20  month guideline range.  Defendant's sentence is the minimum sentence necessary to comply

21  with the sentencing factors set forth in Section 3553(A).

22      The conduct underlying defendant's current sentence included a ten-kilogram

23  methamphetamine pickup, an attempt to import a kilogram of "China white" heroin from

24  Tijuana, and the sale of 350 grams of black tar heroin.  Defendant has three prior felony drug

25  convictions, to boot.  The current sentence is necessary to reflect the seriousness of the instant

26  offense, to promote respect for the law, and to provide just punishment.  It is likewise

27  necessary to achieve both specific and general deterrence, in light of defendant's repeated

28  narcotics convictions and the large volume of drugs at issue.  Finally, the present sentence is

*United States District Court*
*Northern District of California*

necessary to protect the public from further crimes of the defendant in light of the nature of defendant's offenses and his record of recidivism.

## CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is **DENIED**.

**IT IS SO ORDERED.**

Dated:  October 26, 2024

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE